## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **OPTIS WIRELESS TECHNOLOGY, LLC and PANOPTIS PATENT MANAGEMENT, LLC,** | § § § § | **Civil Action No. 2:15-cv-300** |
| **PLAINTIFFS,** | § § | |
| **v.** | § | **JURY TRIAL REQUESTED** |
| **ZTE CORPORATION and ZTE (USA) INC.,** | § § § § | |
| **DEFENDANTS.** | | |

## PLAINTIFFS OPTIS WIRELESS TECHNOLOGY, LLC'S and PANOPTIS PATENT MANAGEMENT, LLC'S COMPLAINT

Plaintiffs Optis Wireless Technology, LLC and PanOptis Patent Management, LLC (together, "Plaintiffs" or "PanOptis") file this Complaint for patent infringement under 35 U.S.C. § 271 against ZTE Corporation and ZTE (USA) Inc. (together, "ZTE"), and allege as follows:

### PARTIES

1.      Plaintiff Optis Wireless Technology, LLC ("Optis Wireless") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 7161 Bishop Road, Suite 200, Plano, Texas 75024.

2.      Plaintiff PanOptis Patent Management, LLC ("PPM") is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 7161 Bishop Road, Suite 200, Plano, Texas 75024.

3.      Upon information and belief, Defendant ZTE Corporation is a corporation organized and existing under the laws of China with its principal place of business at

ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province 518057, China, P.R.C.

4.      Upon information and belief, Defendant ZTE (USA) Inc. is a corporation organized and existing under the laws of the State of New Jersey and maintains its principal place of business at 2425 North Central Expressway, Suite 323, Richardson, Texas 75080.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement under 35 U.S.C. § 271.  This Court has exclusive subject matter jurisdiction over this case under 28 U.S.C. § 1338.

6.      Venue is proper in this Court pursuant to 28 U S.C. §§ 1391 and 1400(b).

7.      This Court has personal jurisdiction over ZTE.  ZTE has conducted and conducts business within the State of Texas.  ZTE, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises (including the provision of an interactive web page) its products (including its infringing products) and/or services in the United States, the State of Texas, and the Eastern District of Texas.

8.      ZTE, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed one or more of its infringing products and/or services, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Eastern District of Texas.  These infringing products and/or services have been and continue to be purchased and used by consumers in the Eastern District of Texas.

9.      ZTE has committed acts of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## THE ASSERTED PATENTS AND INFRINGING INSTRUMENTALITIES

10.     On November 22, 2011, U.S. Patent No. 8,064,919 ("'919 Patent"), entitled "Radio Communication Base Station Device and Control Channel Arrangement Method" was duly and legally issued after full and fair examination, with Masaru Fukuoka, Akihiko Nishio, Seigo Nakao, and Alexander Golitschek Edler Von Elbwart as the named inventors.  Optis Wireless owns all rights, title, and interest in and to the '919 Patent, possesses all rights of recovery (including recovery for past damages) under the '919 Patent, and possesses the right to license the '919 Patent.

11.     On June 12, 2012, U.S. Patent No. 8,199,792 ("'792 Patent"), entitled "Radio Communication Apparatus and Response Signal Spreading Method" was duly and legally issued after full and fair examination, with Seigo Nakao, Daichi Imamura, Akihiko Nishio, and Masayuki Hoshino as the named inventors.  Optis Wireless owns all rights, title, and interest in and to the '792 Patent, possesses all rights of recovery (including recovery for past damages) under the '792 Patent, and possesses the right to license the '792 Patent.

12.     On April 2, 2013, U.S. Patent No. 8,411,557 ("'557 Patent"), entitled "Mobile Station Apparatus and Random Access Method" was duly and legally issued after full and fair examination, with Daichi Imamura, Sadaki Futagi, Atsushi Matsumoto, Takashi Iwai, and Tomofumi Takata as the named inventors.  Optis Wireless owns all rights, title, and interest in and to the '557 Patent, possesses all rights of recovery (including recovery for past damages) under the '557 patent, and possesses the right to license the '557 Patent.

13.     On March 12, 2002, U.S. Patent No. 6,356,631 ("'631 Patent"), entitled "Multi-Client Object Oriented Interface Layer," was duly and legally issued after full and

fair examination, with Shankarnarayan Krishnan as the named inventor. Optis Wireless owns all rights, title, and interest in and to the '631 Patent, possesses all rights of recovery (including recovery for past damages) under the '631 Patent, and possesses the right to license the '631 Patent.

14. On March 8, 2005, U.S. Patent No. 6,865,191 ("'191 Patent"), entitled "System and Method for Sending Multimedia Attachments to Text Messages in Radiocommunication Systems" was duly and legally issued after full and fair examination, with Henrik Bengtsson and Ivan Medved as the named inventors. Optis Wireless owns all rights, title, and interest in and to the '191 Patent, possesses all rights of recovery (including recovery for past damages) under the '191 patent, and possesses the right to license the '191 Patent.

15. The '919, '792, '557, '631, and '191 Patents (collectively, "Asserted Patents") are each valid and enforceable.

16. By way of written agreement between PPM and Optis Wireless, PPM possesses the rights to negotiate and execute licenses for each of the Asserted Patents.

17. ZTE has directly and indirectly infringed and continues to directly and indirectly infringe the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. § 271(a), (b), (c), and/or (f), including but not necessarily limited to one or more of making, using, testing, selling and offering to sell, in this District and elsewhere in the United States, and importing into this District and elsewhere in the United States, certain infringing mobile communication devices, including but not limited to ZTE's mobile phones, tablets, wireless hotspots, and wireless routers which

incorporate the functionalities and compositions described in detail in Counts I-V (collectively, "ZTE Mobile Communication Devices").

18.     The infringing ZTE Mobile Communication Devices include, but are not limited to, UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™ II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice, and all versions and variations thereof.

19.     ZTE's acts of infringement have caused damage to Plaintiffs.  Plaintiffs are entitled to recover from ZTE the damages sustained by Plaintiffs as a result of ZTE's wrongful acts.

## PLAINTIFFS' LTE STANDARDS ESSENTIAL PATENTS

20.     Plaintiffs incorporate by reference paragraphs 1-19 as if fully set forth herein.

21.     The European Telecommunications Standards Institute (ETSI) is a standard setting organization (SSO) that produces globally-accepted standards for the telecommunication industry.  ETSI is an organizational partner of the Third Generation Partnership Project (3GPP), which maintains and develops globally applicable technical specifications for mobile systems, including the specifications for implementation and use of wireless communications for high-speed data referred to as the Long Term Evolution (LTE) standard.

22.     Implementation and use of the LTE standard, including but not limited to use of wireless communications for high-speed data compliant with the LTE specifications as detailed in the 3GPP specification series TS 36.101-36.978, has increased in recent years and continues to increase at a rapid pace.

23.     ETSI has developed and promulgated an IPR Policy (found at Annex 6 to the ESTI Rules of Procedure, published November 19, 2014).  This policy is intended to strike a balance between the needs of standardization for public use in the field of telecommunications on the one hand, and the rights of IPR owners on the other hand. ETSI requires its members to disclose patents that "are or become, and remain ESSENTIAL to practice" its standards or technical specifications.  Clause 15.6 of the ETSI IPR Policy defines the term "ESSENTIAL" to mean that "it is not possible on technical (but not commercial) grounds, taking into account normal technical practice and the state of the art generally available at the time of standardization, to make, sell, lease, otherwise dispose of, repair, use or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR."

24.     Optis Wireless is the assignee of numerous patents, originally assigned to either Telefonaktiebolaget LM Ericsson ("Ericsson") or Panasonic Corporation ("Panasonic"), that are, and remain, essential (as that term is defined by ETSI) to practicing the LTE Standard.

25.     Panasonic, the original assignee of the '919, '792, and '557 Patents ("LTE Essential Patents"), declared these patents as essential to practicing the LTE Standards. Optis Wireless, upon acquisition of the '919, '792, and '557 Patents from Panasonic, re-

declared these patents to ETSI as essential to practicing the LTE Standard, in conformance with ETSI's IPR Policy.

26.     Plaintiffs, in conformance with ETSI's IPR Policy, have informed ZTE that Plaintiffs are prepared to grant ZTE an irrevocable license under the LTE Essential Patents on terms and conditions that are Fair, Reasonable, and Non-discriminatory ("FRAND").

27.     ZTE requires a license to Plaintiffs' LTE Essential Patents because ZTE's Mobile Communication Devices are configured to, and do, operate in compliance with the LTE Standards, and thus infringe the LTE Essential Patents.

28.     Since April 2, 2014, Plaintiffs have been engaged in good faith efforts to license ZTE on FRAND terms.  Between May 2014 and December 2014, representatives from Plaintiffs, at their own expense, traveled and met face-to-face with ZTE representatives six times in various locations throughout Asia, including Xian, China; Shenzhen, China; Hong Kong; and Seoul, South Korea.  During those meetings, Plaintiffs presented, in good faith, material concerning Plaintiffs' LTE Essential Patents, along with FRAND terms for the LTE Essential Patents.  In addition to meeting with ZTE numerous times in Asia, Plaintiffs have initiated and exchanged written correspondence with ZTE and have contacted ZTE by phone on numerous occasions.  Plaintiffs have also provided ZTE with a number of exemplary claim charts showing infringement by ZTE's products that are configured to operate in compliance with the LTE Standards.

29.     To date, ZTE has not reciprocated Plaintiffs' good faith efforts.  ZTE instead has resisted taking a license to Plaintiffs' valuable intellectual property.  Most

recently, ZTE rebuffed Plaintiffs' recent attempts to hold another face-to-face meeting in China this past January.

30.     ZTE has been operating and continues to operate without a license to Plaintiffs' LTE Essential Patents.  Given ZTE's unwillingness to engage in meaningful licensing discussions, to license Plaintiffs' LTE Essential Patents, or to cease infringing Plaintiffs' Patents, Plaintiffs have filed this lawsuit for the purpose of protecting their patent rights in the United States.

## COUNT I
## INFRINGEMENT OF THE '919 PATENT BY ZTE

31.     Plaintiffs incorporate by reference paragraphs 1-30 as if fully set forth herein.

32.     ZTE has directly infringed and continues to directly infringe the '919 Patent by making, using, testing, selling, offering for sale, importing into the United States, distributing within the United States, and/or exporting the ZTE Mobile Communication Devices that comprise mobile stations capable of determining a response signal resource, including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice.

33.     ZTE has and continues to indirectly infringe the '919 Patent by inducing infringement by others of one or more claims, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

34.     ZTE received actual notice of the '919 Patent at least as early as July 18, 2014, by way of correspondence that Optis Wireless sent to ZTE.

35.     ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '919 Patent.

36.     For example and without limitation, operation and use of the ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice),  which incorporate functionalities and associated software and hardware components installed and configured by ZTE for the function and operation of determining a response signal resource in compliance with the LTE Standards, infringes one or more claims of the '919 Patent.  The use and operation of these ZTE Mobile Communication Devices by ZTE, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '919 Patent.

37.     ZTE's affirmative acts of selling the ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing

instruction manuals and support for the ZTE Mobile Communication Devices have induced and continue to induce ZTE's manufacturers, resellers, and end-users to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe one or more claims of the '919 Patent.

38.     Through its manufacture and sale of ZTE Mobile Communication Devices, ZTE specifically intends that its manufacturers, resellers, and end-users directly infringe one or more claims of the '919 Patent.  ZTE has knowledge of the '919 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States ZTE Communication Devices for resale to others, such as resellers and end-use customers.  ZTE is aware that such actions would induce actual infringement. Further, ZTE remains aware that these normal and customary activities would infringe the '919 Patent.

39.     For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the ZTE Mobile Communication Devices, ZTE willfully provides manuals and support to resellers and end-use customers regarding the use and operation of ZTE's products in a way that infringes one or more claims of the '919 patent.  Specifically, ZTE willfully provides manuals and support through sales of the ZTE Communication Devices, through its website www.zteusa.com[1], by telephone, and through other means of communication.

---

[1] For one example, the ZTE "Grand Max X+" manual is available at
http://www.zteusa.com/media/wysiwyg/grand-
maxplus/ZTE_Grand_X_Max_User_Guide_English_-_PDF_-_3.16MB_.pdf (last
accessed February 26, 2015).  ZTE includes instructions to a user or reseller of the Grand
Max X +, and is aware that the '919 Patent is infringed when those instructions are

When resellers and end-use customers follow such instructions and support, they directly infringe the '919 Patent.  ZTE knows or should know that by willfully providing such instructions and support, resellers and end-use customers follow those instructions and support, and directly infringe the '919 Patent.

40.     Accordingly, ZTE has performed and continues to perform the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '919 Patent and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

41.     ZTE indirectly infringes one or more claims of the '919 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

42.     Direct infringement of one or more claims of the '919 Patent is the result of activities performed by ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices.

43.     The ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and  4G  LTE™ Router  with  Voice),  incorporate

---

followed.  Manuals and support for each of the infringing ZTE Mobile Communications Devices are available at www.zteusa.com.

functionalities and associated software and hardware components installed and configured by ZTE for the function and operation of determining a response signal resource in compliance with the LTE Standards.  On information and belief, these functions and operations cannot work in an acceptable manner absent these software and hardware components that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the purposes of performing such functions and operations.  On information and belief, ZTE has designed, configured, and installed such software and hardware to entice users of the ZTE Mobile Communications Devices to use and operate these functionalities and to do so in a manner compliant with the LTE Standards.

44.     The software and hardware components installed and configured by ZTE for the function and operation of determining a response signal resource in compliance with the LTE Standards, do not constitute a staple article or commodity of commerce.  Moreover, use of the same is required for the operation of a ZTE Mobile Communication Device.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

45.     The software and hardware components installed and configured by ZTE for the function and operation of determining a response signal resource in compliance with the LTE Standards are each a material part of the invention of the '919 Patent, are especially made for the infringing manufacture, sale, and use of ZTE Mobile Communication Devices, and have no substantial non-infringing uses.

46.     Accordingly, ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '919 Patent, constituting a material part of

the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others ZTE Mobile Communication Devices with distinct and separate components which have no substantial non-infringing uses.

## COUNT II
## INFRINGEMENT OF THE '792 PATENT BY ZTE

47.     Plaintiffs incorporate by reference paragraphs 1-46 as if fully set forth herein.

48.     ZTE has directly infringed and continues to directly infringe the '792 Patent by making, using, testing, selling, offering for sale, importing into the United States, distributing within the United States, and/or exporting the ZTE Mobile Communication Devices that comprise radio communications apparatuses which operate and/or are configured to operate to spread response signals, including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™   (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice.

49.     ZTE has and continues to indirectly infringe the '792 Patent by inducing infringement by others of one or more claims in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

50.     ZTE received actual notice of the '792 patent at least as early as July 18, 2014, by way of correspondence that Optis Wireless sent to ZTE.  .

51.     ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '792 patent.

52.     For example and without limitation, operation and use of the ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice),  which incorporate functionalities and associated software and hardware components installed and configured by ZTE for the functions and operations of spreading response signals in compliance with the LTE Standards, infringes one or more claims of the '792 Patent.  The use and operation of these ZTE Mobile Communication Devices by ZTE, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '792 Patent.

53.     ZTE's affirmative acts of selling the ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the ZTE Mobile Communication Devices have induced and continue to induce ZTE's manufacturers, resellers, and end-users to make or

use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '792 Patent.

54.     Through its manufacture and sale of ZTE Mobile Communication Devices, ZTE specifically intends that its manufacturers, resellers, and end-users directly infringe one or more claims of the '792 Patent.   ZTE has knowledge of the '792 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe, by using, making, selling, exporting, supplying and/or distributing within the United States ZTE Communication Devices for resale to others, such as resellers and end-use customers.   ZTE is aware that such actions would induce actual infringement.   Further, ZTE remains aware that these normal and customary activities would infringe the '792 Patent.

55.     For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the ZTE Mobile Communication Devices, ZTE willfully provides manuals and support to resellers and end-use customers regarding the use and operation of ZTE's products in a way that infringes the '792 Patent.   ZTE willfully provides manuals and support through sales of the ZTE Communication Devices, through its website www.zteusa.com[2], by telephone, and through other means of communication.   When resellers and end-use customers follow such instructions and support, they directly infringe the '792 Patent.

---

[2] For one example, the ZTE "Grand Max X+" manual is available at http://www.zteusa.com/media/wysiwyg/grand-maxplus/ZTE_Grand_X_Max_User_Guide_English_-_PDF_-_3.16MB_.pdf (last accessed February 26, 2015).   ZTE includes instructions to a user or reseller of the Grand Max X + and is aware that the '792 Patent is infringed when those instructions are followed.   Manuals and support for each of the infringing ZTE Mobile Communications Devices are available at www.zteusa.com.

ZTE knows or should know that by willfully providing such instructions and support, resellers and end-use customers follow those instructions and support, and directly infringe the '792 Patent.

56.     Accordingly, ZTE has performed and continues to perform the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '792 Patent and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

57.     ZTE indirectly infringes one or more claims of the '792 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

58.     Direct infringement of one or more claims of the '792 Patent is the result of activities performed by ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices.

59.     ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice),   incorporate functionalities and associated software and hardware components installed and configured by ZTE for the functions and operations of spreading response signals in

compliance with the LTE Standards.   On information and belief, these functions and operations cannot work in an acceptable manner absent these software and hardware components ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the purposes of performing such functions and operations.   On information and belief, ZTE has designed, configured, and installed such software and hardware to entice users of the ZTE Mobile Communications Devices to use and operate these functions and to do so in a manner compliant with the LTE Standards.

60.     The software and hardware components installed and configured by ZTE for the functions and operations of spreading response signals in compliance with the LTE Standards that are incorporated in the ZTE Mobile Communication Devices do not constitute a staple article or commodity of commerce.   Moreover, use of the same is required for the operation of a ZTE Mobile Communication Device.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

61.     The software and hardware components installed and configured by ZTE for the functions and operations of spreading response signals in compliance with the LTE Standards are each a material part of the invention of the '792 Patent, are especially made for the infringing manufacture, sale, and use of ZTE Mobile Communication Devices, and have no substantial non-infringing uses.

62.     Accordingly, ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '792 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an

infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others ZTE Mobile Communication Devices with distinct and separate components which have no substantial non-infringing uses.

## COUNT III
## INFRINGEMENT OF THE '557 PATENT BY ZTE

63.     Plaintiffs incorporate by reference paragraphs 1-62 as if fully set forth herein.

64.     ZTE has been and is currently directly infringing the '557 Patent by making, using, testing, selling, offering for sale, importing into the United States, distributing within the United States, and/or exporting the ZTE Mobile Communication Devices which comprise mobile stations which operate and/or are configured to operate a random access method, including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™   (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice.

65.     ZTE has directly infringed and continues to directly infringe the '557 Patent by inducing infringement by others of one or more claims, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

66.     ZTE received actual notice of the '557 patent at least as early as July 18, 2014, by way of correspondence that Optis Wireless sent to ZTE.

67.     ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '557 Patent.

68.     For example and without limitation, operation and use of the ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™  890L, and 4G LTE™ Router with Voice),  which incorporate functionalities and associated software and hardware components installed and configured by ZTE for the functions and operations of a random access method in compliance with the LTE Standards, infringes at least one or more claims of the '557 Patent.  The use and operation of these ZTE Mobile Communication Devices by ZTE, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '557 Patent.

69.     ZTE's affirmative acts of selling the ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the ZTE Mobile Communication Devices have induced and continue to induce ZTE's manufacturers, resellers, and end-users to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '557 Patent.

70.     Through its manufacture and sale of ZTE Mobile Communication Devices, ZTE specifically intends that its manufacturers, resellers, and end-users directly infringe one or more claims of the '557 Patent.  ZTE has knowledge of the '557 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe, by using, selling, exporting, supplying and/or distributing within the United States ZTE Communication Devices for resale to others, such as resellers and end-use customers.  ZTE is aware that such actions would induce actual infringement. Further, ZTE remains aware that these normal and customary activities would infringe the '557 Patent.

71.     For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the ZTE Mobile Communication Devices, ZTE willfully provides manuals and support to resellers and end-use customers regarding the use and operation of ZTE's products in a way that infringes the '557 Patent.  ZTE willfully provides manuals and support through sales of the ZTE Communication Devices, through its website www.zteusa.com[3], by telephone, and through other means of communication.   When resellers and end-use customers follow such instructions and support, they directly infringe the '557 Patent. ZTE knows or should know that by willfully providing such instructions and support,

---

[3] As one example, the ZTE "Grand Max X+" manual is available at http://www.zteusa.com/media/wysiwyg/grand-maxplus/ZTE_Grand_X_Max_User_Guide_English_-_PDF_-_3.16MB_.pdf (last accessed February 26, 2015).  ZTE includes instructions to a user or reseller of the Grand Max X + and is aware that the '557 Patent is infringed when those instructions are followed.  Manuals and support for each of the infringing ZTE Mobile Communications Devices are available at www.zteusa.com.

resellers and end-use customers follow those instructions and support, and directly infringe the '557 Patent.

72.     Accordingly, ZTE has performed and continues to perform the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '557 Patent and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

73.     ZTE indirectly infringes one or more claims of the '557 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

74.     Direct infringement of one or more claims of the '557 Patent is the result of activities performed by ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices.

75.     ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, ZMAX™, Home Base™/Home Base™  (GoPhone), Pocket WiFi, LivePro™, 4G LTE Hotspot Z915, Sonic 2.0 Mobile Hotspot LTE, Unite™, Unite™  II, Velocity™, JetPack™   890L, and 4G LTE™ Router with Voice), incorporate functionalities and associated software and hardware components installed and configured by ZTE for the functions and operations of a random access method in compliance with the LTE Standards.  On information and belief, these functions and

operations cannot work in an acceptable manner absent these software and hardware components ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the purposes of performing such functions and operations.   On information and belief, ZTE has designed, configured, and installed such software and hardware to entice users of the ZTE Mobile Communications Devices to use and operate these functionalities and to do so in a manner compliant with the LTE Standards.

76.     The software and hardware components installed and configured by ZTE for the functions and operations of a random access method in compliance with the LTE Standards that are incorporated in the ZTE Mobile Communication Devices do not constitute a staple article or commodity of commerce.   Moreover, use of the same is required for the operation of a ZTE Mobile Communication Device.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

77.     The software and hardware components installed and configured by ZTE for the functions and operations of a random access method in compliance with the LTE Standards that are incorporated in the ZTE Mobile Communication Devices are each a material part of the invention of the '557 Patent, are especially made for the infringing manufacture, sale, and use of ZTE Mobile Communication Devices, and have no substantial non-infringing uses.

78.     Accordingly, ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '557 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an

infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others ZTE Mobile Communication Devices with distinct and separate components which have no substantial non-infringing uses.

## PLAINTIFFS' NON-STANDARDS ESSENTIAL PATENTS

### COUNT IV
### INFRINGEMENT OF THE '631 PATENT BY ZTE

79.     Plaintiffs incorporate by reference paragraphs 1-78 as if fully set forth herein.

80.     The '631 Patent, originally assigned to Ericsson and subsequently assigned to Plaintiffs, is not, and has not been declared, a standards essential patent and accordingly is not subject to FRAND.

81.     ZTE has directly infringed and continues to directly infringe the '631 Patent by making, using, testing, selling, offering for sale, importing into the United States, distributing within the United States, and/or exporting certain ZTE Mobile Communication Devices which transmit and/or are capable of transmitting messages from at least one line device to a plurality of applications, including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, and ZMAX™.

82.     ZTE has and continues to indirectly infringe the '631 Patent by inducing infringement by others, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

83.     ZTE received actual notice of the '631 patent at least as early as July 18, 2014, by way of correspondence that Optis Wireless sent to ZTE.

84.     ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices each have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '631 Patent.

85.     For example and without limitation, operation and use of certain ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, and ZMAX™), which incorporate object-oriented functionalities and associated telephony software interfaces, line devices, and other software and hardware that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of transmitting messages from at least one line device to a plurality of applications, infringes one or more claims of the '631 Patent.  The use and operation of these ZTE Mobile Communication Devices by ZTE, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '631 Patent.

86.     ZTE's affirmative acts of selling the ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the ZTE Mobile Communication Devices have induced and continue to induce ZTE's manufacturers, resellers, and end-users to make or use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '631 Patent.

87.     Through its manufacture and sale of ZTE Mobile Communication Devices, ZTE specifically intends that its manufacturers, distributors, resellers, and end-users directly infringe one or more claims of the '631 Patent.  ZTE has knowledge of the '631 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe, by using, making, selling, exporting, supplying and/or distributing within the United States ZTE Communication Devices for resale to others, such as resellers and end-use customers.  ZTE is aware that such actions would induce actual infringement.  Further, ZTE remains aware that these normal and customary activities would infringe the '631 Patent.

88.     For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the ZTE Mobile Communication Devices, ZTE willfully provides manuals and support to resellers and end-use customers regarding the use and operation of ZTE's products in a way that infringes the '631 Patent.  ZTE willfully provides manuals and support through sales of the ZTE Communication Devices, through its website www.zteusa.com[4], by telephone, and through other means of communication.  When resellers and end-use customers follow such instructions and support, they directly infringe the '631 Patent. ZTE knows or should know that by willfully providing such instructions and support,

---

[4] For one example, the ZTE "Grand Max X+" manual is available at http://www.zteusa.com/media/wysiwyg/grand-maxplus/ZTE_Grand_X_Max_User_Guide_English_-_PDF_-_3.16MB_.pdf (last accessed February 26, 2015March 2, 2015).  ZTE includes instructions to a user or reseller of the Grand Max X +, and is aware that the '631 Patent is infringed when those instructions are followed.  Manuals and support for each of the infringing ZTE Mobile Communications Devices are available at www.zteusa.com.

resellers and end-use customers follow those instructions and support, and directly infringe the '631 Patent.

89.     Accordingly, ZTE has performed and continues to perform the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '631 Patent and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

90.     ZTE indirectly infringes one or more claims of the '631 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

91.     As established, ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices each use and operate the ZTE Mobile Communication devices in a manner that directly infringes one or more claims of the '631 Patent.

92.     Certain ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, and ZMAX™) incorporate infringing object-oriented functionalities and associated telephony software interfaces, line devices, and other software and hardware that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of transmitting messages from at least one line device to a plurality of applications.  On information and belief, these functions and operations cannot work in

an acceptable manner absent the software and hardware that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the specific purpose of performing such functions.  On information and belief, ZTE has designed, configured, and installed such software and hardware to entice users of the ZTE Mobile Communications Devices to use and operate the object-oriented functionalities and associated telephony software interfaces, line devices, and other software and hardware that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of transmitting messages from at least one line device to a plurality of applications.

93.     The object-oriented functionalities and associated telephony software interfaces, line devices, and other software and hardware that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of transmitting messages from at least one line device to a plurality of applications, do not constitute a staple article or commodity of commerce.  Moreover, use of the same is required for the operation of a ZTE Mobile Communication Device.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

94.     The object-oriented functionalities and associated telephony software interfaces, line devices, and other software and hardware that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of transmitting messages from at least one line device to a plurality of applications are each a material part of the invention of the '631 Patent, are especially made for the infringing manufacture, sale, and use of ZTE Mobile Communication Devices, and have no substantial non-infringing uses.

95.     Accordingly, ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '631 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  ZTE provides to others ZTE Mobile Communication Devices with distinct and separate components which have no substantial non-infringing uses.

### COUNT V
### INFRINGEMENT OF THE '191 PATENT BY ZTE

96.     Plaintiffs incorporate by reference paragraphs 1-95 as if fully set forth herein.

97.     The '191 Patent, originally assigned to Ericsson and subsequently assigned to Plaintiffs, is not, and has not been declared, a standards essential patent and accordingly is not subject to FRAND.

98.     ZTE has directly infringed and continues to directly infringe the '191 Patent by making, using, testing, selling, offering for sale, importing into the United States, distributing within the United States, and/or exporting certain ZTE Mobile Communication Devices which are capable of sending multimedia attachments to text messages using phone number addressing, including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, and ZMAX™.

99.     ZTE has and continues to indirectly infringe the '191 Patent by inducing infringement by others, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.

100.    ZTE received actual notice of the '191 patent at least as early as July 18, 2014, by way of correspondence that Optis Wireless sent to ZTE.

101.    ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices each have engaged in and currently engage in activities that constitute direct infringement of one or more claims of the '191 Patent.

102.    For example and without limitation, operation and use of certain ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, and ZMAX™), which incorporate messaging software and associated hardware and software that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of sending multimedia attachments to text messages using phone number addressing, infringes one or more claims of the '191 Patent.  The use and operation of these ZTE Mobile Communication Devices by ZTE, its resellers, manufacturers, or end-user customers constitutes a direct infringement of one or more claims of the '191 Patent.

103.    ZTE's affirmative acts of selling the ZTE Mobile Communication Devices, causing the ZTE Mobile Communication Devices to be manufactured, and providing instruction manuals and support for the ZTE Mobile Communication Devices have induced and continue to induce ZTE's manufacturers, resellers, and end-users to make or

use the ZTE Mobile Communication Devices in their normal and customary way to infringe the '191 Patent.

104.    Through its manufacture and sale of ZTE Mobile Communication Devices, ZTE specifically intends that its manufacturers, distributors, resellers, and end-users directly infringe one or more claims of the '191 Patent.  ZTE has knowledge of the '191 Patent and actually induces others, such as resellers, manufacturers and end-use customers, to directly infringe, by using, making, selling, exporting, supplying and/or distributing within the United States ZTE Communication Devices for resale to others, such as resellers and end-use customers.  ZTE is aware that such actions would induce actual infringement.  Further, ZTE remains aware that these normal and customary activities would infringe the '191 Patent.

105.    For example and without limitation, in connection with its sale, offering to sell, importation into the United States, and distributing within the United States of the ZTE Mobile Communication Devices, ZTE willfully provides manuals and support to resellers and end-use customers regarding the use and operation of ZTE's products in a way that infringes the '191 Patent.  ZTE willfully provides manuals and support through sales of the ZTE Communication Devices, through its website www.zteusa.com[5], by telephone, and through other means of communication.  When resellers and end-use customers follow such instructions and support, they directly infringe the '191 Patent.

---

[5] For one example, the ZTE "Grand Max X+" manual is available at http://www.zteusa.com/media/wysiwyg/grand-maxplus/ZTE_Grand_X_Max_User_Guide_English_-_PDF_-_3.16MB_.pdf (last accessed February 26, 2015).  ZTE includes instructions to a user or reseller of the Grand Max X +, and is aware that the '191 Patent is infringed when those instructions are followed.  Manuals and support for each of the infringing ZTE Mobile Communications Devices are available at www.zteusa.com.

ZTE knows or should know that by willfully providing such instructions and support, resellers and end-use customers follow those instructions and support, and directly infringe the '191 Patent.

106.    Accordingly, ZTE has performed and continues to perform the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '191 Patent and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

107.    ZTE indirectly infringes one or more claims of the '191 Patent by contributing to infringement by others, such as manufacturers, resellers and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.

108.    As established, ZTE, its manufacturers, resellers, distributors, and end-users of the ZTE Mobile Communication Devices each use and operate the ZTE Mobile Communication devices in a manner that directly infringes one or more claims of the '191 Patent.

109.    Certain ZTE Mobile Communication Devices (including but not limited to UNICO LTE, Anthem™ 4G, Avid™ 4G, Max™, Warp 4G, Compel™, Flash™, Force, Grand S Pro™, Grand X Max +, Grand X LTE, Imperial™, Imperial™  II, Nubia 5S mini LTE, Overture™, Rapido LTE, Source™, Speed™, Supreme™, Vital™, Warp Sync™, Z998, and ZMAX™) incorporate infringing messaging software and associated hardware and software that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of sending multimedia attachments to text messages using phone number addressing.   On information and belief, these functions

cannot work in an acceptable manner absent the software and hardware that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the specific purpose of performing such functions.  On information and belief, ZTE has designed, configured, and installed such software and hardware to entice users of the ZTE Mobile Communications Devices to use and operate messaging software and associated hardware and software that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of sending multimedia attachments to text messages using phone number addressing.

110.    The messaging software and associated hardware and software that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of sending multimedia attachments to text messages using phone number addressing, do not constitute a staple article or commodity of commerce.   Moreover, use of the same is required for the operation of a ZTE Mobile Communication Device.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

111.    The messaging software and associated hardware and software that ZTE configures, installs, and includes in the ZTE Mobile Communication Devices for the function of sending multimedia attachments to text messages using phone number addressing are each a material part of the invention of the '191 Patent, are especially made for the infringing manufacture, sale, and use of ZTE Mobile Communication Devices, and have no substantial non-infringing uses.

112.    Accordingly, ZTE offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a

material or apparatus for use in practicing the '191 Patent, constituting a material part of

the invention, knowing the same to be especially made or especially adapted for use in an

infringement of such patent, and not a staple article or commodity of commerce suitable

for substantial non-infringing use.  ZTE provides to others ZTE Mobile Communication

Devices with distinct and separate components which have no substantial non-infringing

uses.

## COUNT VI
## WILLFUL INFRINGEMENT

113.    Plaintiffs incorporate by reference paragraphs 1-112 as if fully set forth

herein.

114.    ZTE has willfully infringed and/or does willfully infringe each of the '919,

'792, '557, '631, and '191 Patents.

115.    ZTE received actual notice of each of the '919, '792, '557, '631, and '191

Patents at least as early as July 18, 2014, by way of correspondence that Optis Wireless

sent to ZTE.

116.    After receiving such actual notice of the '919, '792, '557, '631, and '191

Patents, ZTE proceeded to make, use, test, sell and offer to sell in this District and

elsewhere in the United States, and import into this District and elsewhere in the United

States, the ZTE Mobile Communication Devices.

117.    On information and belief, ZTE engaged in such activities despite an

objectively high likelihood that its actions constituted infringement of valid patents.  ZTE

knew or should have known that its actions would cause direct infringement of each of the

'919, '792, '557, '631, and '191 Patents.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.      A judgment that ZTE has directly infringed the '919 Patent, contributorily infringed the '919 Patent, and/or induced the infringement of the '919 Patent;

2.      A judgment that ZTE has directly infringed the '792 Patent, contributorily infringed the '792 Patent, and/or induced the infringement of the '792 Patent;

3.      A judgment that ZTE has directly infringed the '557 Patent, contributorily infringed the '557 Patent, and/or induced the infringement of the '557 Patent;

4.      A judgment that ZTE has directly infringed the '631 Patent, contributorily infringed the '631 Patent, and/or induced the infringement of the '631 Patent;

5.      A judgment that ZTE has directly infringed the '191 Patent, contributorily infringed the '191 Patent, and/or induced the infringement of the '191 Patent;

6.      A judgment that ZTE's infringement of the '919, '792, '557, '631, and '191 Patents has been willful;

7.      A judgment and order requiring ZTE to pay Plaintiffs' damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and treble damages for willful infringement as provided by 35 U.S.C. § 284;

8.      A judgment and order requiring ZTE to pay Plaintiffs the costs of this action (including all disbursements);

9.      A judgment and order requiring ZTE to pay Plaintiffs pre-judgment and

post-judgment interest on the damages awarded;

10.     A post-judgment forward royalty;

11.     A ruling that this case be found to be exceptional under 35 U.S.C. § 285,

and a judgment awarding Plaintiffs their attorneys' fees incurred in prosecuting this

action; and

12.     Such other and further relief as the Court may deem just and proper.


DATED: March 2, 2015                         Respectfully submitted,
                                             **MCKOOL SMITH, P.C.**

                                             */s/ Mike McKool*
                                             Mike McKool
                                             Texas Bar No. 13732100
                                             mmckool@mckoolsmith.com
                                             Douglas A. Cawley
                                             Texas Bar No. 0403550
                                             dcawley@mckoolsmith.com
                                             MCKOOL SMITH P.C.
                                             300 Crescent Court, Suite 1500
                                             Dallas, Texas 75201
                                             Telephone: (214) 978-4000
                                             Facsimile: (214) 978-4044

                                             Sam Baxter
                                             Texas State Bar No. 01938000
                                             sbaxter@mckoolsmith.com
                                             MCKOOL SMITH P.C.
                                             104 E. Houston Street, Suite 300
                                             P.O. Box O
                                             Marshall, Texas 75670
                                             Telephone: (903) 923-9000
                                             Facsimile: (903) 923-9099

Steven J. Pollinger
Texas State Bar No. 24011919
spollinger@mckoolsmith.com
Kevin L. Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
Laurie Fitzgerald
Texas State Bar No. 24032339
lfitzgerald@mckoolsmith.com
Ramzi R. Khazen
Texas State Bar No. 24040855
rkhazen@mckoolsmith.com
MCKOOL SMITH P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

**ATTORNEYS FOR PLAINTIFFS
OPTIS WIRELESS
TECHNOLOGY, LLC and
PANOPTIS PATENT
MANAGEMENT, LLC.**