**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **OPTIS WIRELESS TECHNOLOGY, LLC AND PANOPTIS PATENT MANAGEMENT, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**ZTE CORPORATION AND ZTE (USA) INC.,**<br><br>Defendants. | Civil Action No.  2:15-cv-300 |

**ORDER REGARDING THE DISCOVERY AND PRODUCTION
OF ELECTRONIC INFORMATION**

This Order Regarding E-Discovery and Agreement Regarding the Format of Document Productions shall govern the parties in the above-captioned case (the "Litigation").  This Order supplements all other discovery rules and orders.  It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by the Federal Rules of Civil Procedure.

I. **GENERAL PROVISIONS**

A. The parties will make reasonable efforts to prepare responsive and nonprivileged data for production in accordance with the agreed-upon specifications set forth below. These specifications apply to hard copy documents or electronically stored information ("ESI") which are to be produced in this litigation.

B. **SECURITY.**  The parties will make reasonable efforts to ensure that any productions made are free from viruses and provided on encrypted media.  The parties recognize that sometimes productions will be served by FTP or email.

1

C. **CONFIDENTIALITY DESIGNATION.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

D. **FORMAT OF PRODUCTION.** Hard copy documents will be produced under the specifications outlined in Section III. Standard electronic files such as email, documents, spreadsheets, presentations, web pages, and PDFs will be produced under the specifications outlined in Section IV. The format of production of large oversized hard copy documents and non-standard electronic files will be discussed before production to determine acceptable production format.

E. **PRODUCTION MEDIA.** Documents shall be produced on external hard drives, readily accessible computer(s), via FTP or email, or on other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each piece of production media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) whether the media contains Protected Material under the Protective Order in this case.

F. **PRODUCTION CORRESPONDENCE.** When productions are made by FTP or email, the production cover letter shall include the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g., "-001," "-002"). The production cover letter shall also include (1) the producing party's name; (2) the production

date; (3) the Bates Number range of the materials contained in the production; and (4) whether the production contains Protected Material under the Protective Order in this case.

## II.     DATA PROCESSING

**A.     KEYWORD SEARCHING.** To the extent that keyword or other methodologies are used to identify the universe of potentially responsive documents to be processed for review, the parties shall meet and confer to develop a mutually agreeable list of search terms and protocols prior to the production of documents. Any search methodology employed must open compound and nested files and de-compress archived files. The search utilities employed must support the use of stemmed searches (e.g., using ~ to include variations on a keyword), wildcard searches, Boolean searches, and proximity searching.

**B.     CULLING\FILTERING.** Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, MP3, MP4, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers.

**C.     DEDUPLICATION.** A party is required to produce only a single copy of a responsive document and a party shall make best efforts to de-duplicate responsive ESI (based

on MD5 or SHA-1 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near- duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de- duplication.

### III. PRODUCTION OF HARD COPY DOCUMENTS

**A. TIFFs.** Documents that exist only in hard copy format shall be scanned and produced as single page Group IV TIFFs, with at least 300 dots per inch (dpi). Each TIFF image shall be named according to a unique corresponding bates number associated with the document. Each image shall be branded according to the bates number and the agreed upon confidentiality designation. TIFFs shall show all text and images that would be visible to a user of the hard copy documents. The parties will accommodate reasonable requests for production of specific images in color. The requesting party shall bear costs incurred for any such production over 100 pages per producing party.

**B. UNITIZING OF DOCUMENTS.** In scanning hard copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hard copy documents should be logically unitized). The parties will use reasonable efforts to unitize documents correctly.

**C. OCR TEXT FILES.** A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. OCR text shall be provided as a single multi-page text file for each document, and the filename should match its

respective TIFF filename. The text files will not contain the redacted portions of the documents.

    **D.**    **METADATA FIELDS.** The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CONFIDENTIALITY, and (f) CUSTODIAN.

    **E.**    **DATABASE LOAD FILES/CROSS-REFERENCE FILES.** Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Summation, or Relativity). Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

    **F.**    **BATES NUMBERING.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

**IV.**    **PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

    **A.**    **METADATA FIELDS AND PROCESSING.** Absent a showing of good cause, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure requirement of this Court, shall not include metadata, with the exception of the following, to the extent such information exists: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f) CONFIDENTIALITY, (g) TEXT LINK, (h) NATIVELINK (i) TO, (j) FROM, (k) CC, (l) BCC, (m) DATE SENT, (n) TIME SENT, (o) DATE RECEIVED, (p) TIME RECEIVED, (q) LAST MODIFIED DATE, (r) DATE CREATED, (s) FILE NAME, (t) FILE EXTENSION, (u)

TITLE, (w) REDACTED, and (x) CONFIDENTIALITY, as further described in Appendix 1. The above-identified metadata fields should be populated by the party or the party's vendor. Fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production if such fields exist. The parties will make reasonable efforts to ensure that metadata fields automatically extracted from the documents are correct, however, the parties acknowledge that such metadata may not always be accurate and might instead contain irrelevant or incorrect information generated during the collection process. Parties may request other native files be produced as described in Section IV.I. below. To the extent that the term "native" is used in this agreement, it means either in native or otherwise comparable format. Thus, for example, if a Google slide presentation is to be produced in native format, producing the document as a .ppt file would be appropriate.

      **B.**     **TIFFs.** But for the exceptions below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Each TIFF image shall be named according to a unique corresponding bates number associated with the document. Each image shall be branded according to the bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

      **C.**     **TEXT FILES.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

      **D.    DATABASE LOAD FILES/CROSS-REFERENCE FILES.** Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited data file (.txt, .dat, or .csv) or data file (.dat with Concordance delimiters), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance, Summation, and Relativity). Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. Each TIFF in a production must be referenced in the corresponding image load file. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the database load file.

      **E.    BATES NUMBERING.** All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

      **F.    PRESENTATIONS.** The parties shall take reasonable effort to process presentations (MS PowerPoint, Google Presently) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF image.

      **G.    SPREADSHEETS.** TIFF images of spreadsheets (MS Excel, Google Trix) need not be produced unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files. Native copies of spreadsheets shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. The TIFF placeholder should also indicate the bates number and confidentiality level assigned to the native document. If a spreadsheet has been redacted, TIFF images and

OCR text of the redacted document will suffice in lieu of a native file and extracted text. The parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF images are formatted so as to be readable.

      H.     **PROPRIETARY FILES.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

      I.     **REQUEST(S) FOR ADDITIONAL NATIVE FILES.** If good cause exists to request production of certain files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not be unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix 1.

      A TIFF placeholder indicating that the document was provided in native format should accompany the database record. The TIFF placeholder should also indicate the bates number and confidentiality level assigned to the native document. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

      J.     **REDACTION OF INFORMATION.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

**V.      PROCESSING OF THIRD-PARTY DOCUMENTS**

      **A.**      A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Order with the subpoena and state that the parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.

      **B.**      If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to the opposing party.

      **C.**      Nothing in this Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third-parties to object to a subpoena.

**VI.     SOURCES**

  **A. Sources That Will Be Searched for Responsive Documents.**

      The parties agree to search central repositories, including central databases, or relevant portions thereof to the extent that the party reasonably anticipates may contain non-duplicative Responsive Documents.  The parties agree to meet and confer to limit the scope of production from central repositories if the search of central repositories (or relevant portions thereof) that the producing party anticipates contain Responsive Documents is unduly burdensome or is likely to be unreasonably inefficient in identifying relevant documents. Specifically, the parties recognize that certain repositories, by their nature, may not effectively or reasonably be searched using electronic search strings, and the parties agree to notify each other of any such repositories that contain Responsive Documents. The parties will then meet and confer to discuss the collection of Responsive Documents from such repositories, including potentially using other effective collection methodologies.

      **B.**      General ESI production requests under Federal Rules of Civil Procedure 34 and 45, or compliance with a mandatory disclosure of this Court, shall not include email or other

forms of electronic correspondence (collectively, "e-mail").  To obtain e-mail parties must propound specific e-mail requests.

  **C.** E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific identification of the ten (10) most significant listed e-mail custodians per side in view of the pleaded claims and defenses[1], infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages.  **The parties shall exchange a specific listing of the ten (10) most likely e-mail custodians per side no later than forty-five (45) days after the entry of this Order.** Otherwise, the exchange of the above information shall occur at the time required under the Federal Rules of Civil Procedure, Local Rules, or by order of the Court.

  **D.** E-mail production requests shall identify the custodian, search terms, and time frame documents sought.  The parties shall cooperate to identify the proper custodians, proper search terms, and proper time frame.  **Each requesting party shall limit its e-mail production requests to a total of eight (8) custodians per side for all such requests**.  The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional or fewer custodians per side, upon showing a distinct need based on the size, complexity, and issues of this specific case.

  **E.** **Each requesting party shall limit its e-mail production requests to a total of twelve (12) search terms per custodian per side.** The parties may jointly agree to modify this limit without the Court's leave.  The Court shall consider contested requests for additional or fewer search terms, upon showing a distinct need based on the size, complexity, and issues of

---

[1] A "specific identification" requires a short description of why the custodian is believed to be significant.

this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

      F.      In response to the e-mail production requests, the parties will search any e-mails, electronic files or folders, or other parts of media, including any internal and external hard drives and other ESI venues (including, but not limited to, recordable optical media, media cards, thumb drives, non-volatile memory, floppy disks, work desktop and laptop computers, email servers, intranet servers, network shares, public data shares and/or database servers) for each identified custodian that the custodian reasonably anticipates may contain non-duplicative responsive e-mail.

      G.      Should any of the search terms proposed by a requesting party result in a disproportionate number of hits that the producing party believes would result in overly burdensome production, the producing party shall notify the requesting party no later than fifteen (15) days after receiving the search terms. The parties shall meet-and-confer in a good faith effort to narrow the search terms no later than five (5) business days after the producing party provides the above-mentioned notice. Failure to provide the above-mentioned notice shall

constitute a presumption that the search terms proposed by requesting party are narrowly tailored to particular issues and sufficiently reduce the risk of overproduction such that cost-shifting is not warranted.

   **H.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to back up tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case. Absent a showing of good cause, voice-mails, PDAs and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

   The parties further agree that the parties to this action and their subsidiaries need not search documents or ESI created after the filing of the complaint.

**VII.** **SOURCE CODE**

   To the extent relevant to the Litigation, source code will be made available for inspection pursuant to the terms of the Protective Order. The parties agree that the search terms will not be applied to source code.

**VIII.** **MISCELLANEOUS PROVISIONS**

   **A.** **Objections Preserved.** Nothing in this protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

   **B.** The mere production of ESI in this litigation as part of a mass production shall not itself constitute waiver for any purpose.

   **C.** **No Effect on Cost Shifting.** Nothing in this Agreement shall affect, in any way, a producing party's right to seek reimbursement for costs associated with collection, review,

and/or production of documents or ESI.  A party's meaningful compliance with this order and efforts to promote efficiency and reduce costs will be considered in cost- shifting determinations.

**D.** Except as expressly stated, nothing in the order affects the parties' discovery obligations under the Federal or Local Rules.

**SIGNED this 18th day of August, 2015.**

                                             _____
                                             ROY S. PAYNE
                                             UNITED STATES MAGISTRATE JUDGE

## Appendix 1

A. **Production Components.** Productions shall include, in addition to single page TIFFs and Text Files, (a) an ASCII delimited metadata file (.txt, .dat, or .csv), and (b) an image load file that can be loaded into commercially acceptable production software (e.g., Concordance).

B. **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT

   **Additionally, document productions containing images shall include an accompanying Opticon or .OPT load file.**

C. **Metadata Load File**: The parties shall produce a .dat file (metadata load fil) with Concordance delimiters with each production.

D. The following **Metadata Fields** shall appear in the metadata load file as agreed above, and to the extent metadata relating to the field exists:

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Includes the Individual (Custodian) from whom the documents originated and all Individual(s) whose documents de-duplicated out (De-Duped Custodian). |
| TO | The recipient of the email. |
| FROM | The sender of the email. |
| CC | The parties copied on the email. |
| BCC | The parties blind copied on the email. |
| DATE SENT (MM/DD/YYYY) | The date the email was sent. |
| TIME SENT (GMT) | The time the email was sent in Greenwich Mean Time (GMT). |

| Field Name | Field Description |
|---|---|
| DATE RECEIVED (MM/DD/YYYY) | The date the email was received. |
| TIME RECEIVED | The time the email was received. |
| LAST MODIFIED DATE (MM/DD/YYYY) | Date the item was last modified. |
| DATE CREATED (MM/DD/YYYY) | Date the item was created. |
| FILE NAME | The filename of the source native file for an ESI item. |
| FILE EXTENSION | The file extension of the source native file (i.e., .xls, .doc). |
| TITLE | Any value populated in the Title field of the source file. |
|  |  |
| REDACTED | User-generated field that will indicate whether the document contains any redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted.  Otherwise field is "null." |
| CONFIDENTIALITY | User-generated field that will indicate whether the document has been affixed with a confidentiality designation. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted.  Otherwise the field is "null". |
| CONFIDENTIALITY | The Confidentiality Level assigned to the produced document. |
| TEXT LINK | Link to the Text File |
| NATIVELINK | Native File Link (Native Files only) |